UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **DERRICK W. MORRIS,**<br><br>　　　　**Plaintiff,**<br><br>　*vs.*<br><br>**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**<br><br>　　　　**Defendant.** | **CAUSE NO. 1:13-cv-1017-SEB-DKL** |

**REPORT AND RECOMMENDATION**

Plaintiff Derrick Morris applied for Supplemental Security Income benefits under the Social Security Act, alleging that he became disabled on May 2, 2000. The defendant Commissioner of Social Security denied his application and he filed the present action for judicial review of that decision. The assigned district judge referred this Cause to this magistrate judge for submission of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *Order Referring Issues to Magistrate Judge* [doc. 10]. For the reasons explained herein, this magistrate judge recommends that the Commissioner's denial be affirmed.

**Standards of review and disability**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d

1

467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. § 404.1520.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the applicant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by diagnostic and criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as

sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids

result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Discussion**

Mr. Morris applied for benefits in May 2009. (R. 108-117.) His application was denied on initial and reconsideration reviews in August and October 2009. (R. 51-54, 58-60.) After counsel entered an appointment-of-representative form and a fee agreement

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

in November 2009, (R. 61-62), Mr. Morris request a hearing before an ALJ, (R. 63-64). A hearing was held on August 2, 2011 but Mr. Morris did not appear. (R. 45-48.) His counsel appeared and informed the Court that she was unaware where Mr. Morris was and that her office had tried but failed to make contact with him for "several months." The ALJ adjourned the hearing and issued an order to show cause.

As it turned out, Mr. Morris had been incarcerated since late December 2009. (R. 31-32.) He had been released earlier that year, applied for benefits, retained counsel after the state-agency's initial and reconsideration denials, then was re-incarcerated on a parole violation, (R. 31), and lost contact with his counsel. His counsel eventually withdrew in November 2011, (R. 98), and, in the next month, a second hearing was scheduled for January 2012, (R. 99-107). That hearing occurred on January 10, 2012. Mr. Morris appeared by telephone from his correctional facility. (R. 27-44.) He was unrepresented by counsel. The ALJ issued his denial decision in February 6, 2012. (R. 16-22.)

At step one, the ALJ found that Mr. Morris had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ found that Mr. Morris had the impairments of hyperlipidemia, hypertension, and diabetes mellitus, but he found that none of them were severe. Thus, the ALJ found that Mr. Morris was not disabled at step two. Because the Appeals Council denied Mr. Morris' request for review, it is the ALJ's decision that the Court reviews as the final decision of the Commissioner.

Mr. Morris is represented by counsel in this appeal. He asserts three arguments against the ALJ's decision.

**1. Invalid waiver of counsel.** At the commencement of the second hearing, the ALJ engaged in this colloquy:

> ALJ: Okay. And so, Mr. Morris, you're -- you were represented by an attorney but you aren't at the present time, is that right?
> CLMT: Yes, sir.
> ALJ: And are you willing to go ahead today without an attorney?
> CLMT: Yes, sir.

(R. 29.)

This brief inquiry fails to satisfy this Circuit's well-established standard for assuring valid waivers of a claimant's right to counsel. See, *e.g.*, *Skinner v. Astrue*, 478 F.3d 836, 841-42 (7th Cir. 2007); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). To assure a valid waiver of counsel, an ALJ must inform a claimant of (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency-free arrangement, and (3) the limitation on fees of 25% of past-due benefits and the requirement for court approval of fees. *Id.*

Although the Commissioner concedes that the ALJ failed to follow this prescribed procedure,[1] she argues that it was unnecessary in this case because "Plaintiff, was, in fact,

---

[1] The Court notes that the December 12, 2011 notice setting the January 10, 2012 second hearing that the Social Security Administration sent to Mr. Morris includes a two-page form entitled "Your Right

represented by counsel for all the administrative proceedings through the first hearing." (*Defendant's Memorandum in Support of the Commissioner's Decision* [doc. 25] ("*Response*") at 4.) Thus, the Commissioner argues, Mr. Morris in fact had a representative to develop the record and request the ALJ to obtain additional evidence or testimony on his behalf; he was aware of the benefits of counsel; and he was aware of the possibility of contingent-fee counsel. (*Id.* at 4-5.) Even so, the Commissioner does not assert that Mr. Morris' previous retention of counsel made him aware of the possibility of obtaining free replacement counsel, the 25% cap on fees, or the requirement for court approval. Moreover, in the same or the next month after retaining counsel, he was re-incarcerated and lost contact with his counsel until the first hearing. Thus, he, in fact, had no counsel gathering evidence to develop his case.

The ALJ thus failed to obtain a valid waiver of Mr. Morris' right to representation. This does not require a remand, however, unless Mr. Morris was prejudiced thereby, meaning that the ALJ did not develop a full and fair record. *Binion*, 13 F.3d at 245. When a claimant is not represented by counsel, an ALJ has the duty to scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts. *Id.* When a claimant is unrepresented by counsel, but did not validly waive his right to counsel, the

---

to Representation" which advises claimants of some, if not all, of the information required by *Skinner* and *Binion*. (R. 99, 105-06.) The Commissioner does not rely on or cite to this notice, so any argument based thereon has been forfeited. The Court notes that there might be a question whether adequate written notices may assure a valid waiver or whether ALJs must personally advise claimants of their rights and opportunities. *See Thompson v. Sullivan*, 933 F.2d 581, 584-85 (7th Cir. 1991); *Baker v. Colvin*, No. 1:12-cv-1814-WTL-MJD, *Entry on Judicial Review*, 2014 WL 900921, *3 (S.D. Ind., March 6, 2014).

burden shifts to the Commissioner to show that the ALJ adequately developed the record. *Id.* The claimant then has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap. *Id.*

The Commissioner argues that the ALJ did adequately develop the record and the Court agrees. Considering the 104 pages of medical records that the ALJ thoroughly reviewed and explained did not show severe impairments, the ALJ's inquiries during the hearing were focused and searching. He asked Mr. Morris about this symptoms, his functional capabilities, and his medical history. The ALJ obtained medical records from some of Mr. Morris' correctional facilities, (R. 205-60), and Mr. Morris was sent for a physical consultative examination in July 2009, (R. 20).

Mr. Morris' only argument against the ALJ's development of the record is that "[t]he claimant's testimony obviously indicated that he had significantly below average intelligence, he had been in special education in school and he could not read or write. The record needed to be completed by having the claimant undergo a psychological evaluation to include intelligence testing, to be provided by Social Security." (*Plaintiff's Brief in Support of Complaint to Review Decision of Social Security Administration* [doc. 22] ("*Brief*") at 6.) Mr. Morris points to no medical opinion or any accepted medical source in the record evidence diagnosing, suggesting, or questioning whether Mr. Morris has "significantly below average intelligence" or should undergo a psychological evaluation and intelligence testing. That he was in special education classes and he told the ALJ that

9

he can read and write "a little bit", (R. 38), does not indicate that he might have disabling intelligence deficits that required further exploration. The ALJ observed Mr. Morris during the hearing and evidently observed nothing to indicate the existence of a possible mental impairment or reason to obtain a psychological assessment. On its review of the hearing transcript, the Court discerns no grounds to second-guess the ALJ's judgment on this issue. At any rate, Mr. Morris, now represented by counsel, offers no medical evidence or opinion that Mr. Morris might have a disabling mental impairment.

The Court finds that Mr. Morris has not shown that the ALJ erred by not obtaining a valid waiver of his right to counsel at the hearing.

**2. Lack of substantial evidence.** Mr. Morris next states that the ALJ's decision must be reversed because "his Step 2 determination was contrary to the agency's regulation, contrary to Social Security Ruling 85-28, and contrary to the evidence." (*Brief* at 8.) He then quotes S.S.R. 85-28 and summarizes several decisions that reversed ALJs for various deficiencies. He concludes with: "The ALJ in the instant case, acting without a medical advisor (orthopedist, neurologist), ignored, misstated, argued with and rejected the medical evidence which supported a finding of Severe impairment or total disability." (*Id.* at 11.) There is no argument here, only conclusion. Any argument that might have been made is forfeited.

**3. Erroneous credibility determination.** Mr. Morris argues that the ALJ's credibility determination is erroneous for two reasons. First, it is "contrary to the

10

evidence, because the ALJ arbitrarily and erroneously rejected the medical evidence which proved the claimant's combined impairments rendered him totally disabled due to chronic pain and thus fully corroborated the claimant's allegations of total disability." (*Brief* at 12.) This statement is followed with citations to decisions reversing deficient credibility determinations by ALJs. Again, there is no argument here and any that could have been made is forfeited.

Second, Mr. Morris argues that the ALJ's use of "boilerplate" credibility language and placement of his credibility conclusion before the articulation of his rationale is erroneous and requires reversal. While some decisions of the Seventh Circuit have criticized ALJs' use of boilerplate language and the "backwards" structure of their credibility articulations — leading with the conclusion, followed by evaluation of the evidence and rationale — the Court has also stated that the use of boilerplate and particular placement alone is not erroneous as long as the ALJ otherwise addresses the evidence and explains his evaluation. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). In this case, the ALJ explained his credibility rationale in the context of the evidence and the factors provided in S.S.R. 96-7p. His explanation was far from perfunctory. Mr. Morris has not shown that the ALJ committed error in his compositional style.

## Conclusion

This magistrate judge **RECOMMENDS** that the Commissioner's decision denying Mr. Morris' application for benefits be **AFFIRMED**.

**Notice regarding objections**

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010);

*Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 08/08/2014

_____
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel *via* ECF-generated e-mail.